# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

ALEXANDRA ("SANDY") DIXON,

      Plaintiff,

v.                                                                                            Civil No. 01-155 WJ/DJS ACE

BOARD OF EDUCATION OF THE
ALBUQUERQUE PUBLIC SCHOOLS,
ALBUQUERQUE PUBLIC SCHOOL
DISTRICT, BRADFORD ALLISON, Ph.D.,
Superintendent of the Albuquerque Public Schools,
in his individual capacity, and BARBARA LYNN,
in her individual capacity.

## MEMORANDUM OPINION AND ORDER

      THIS MATTER comes before the Court upon the following motions: (1) Motion by Defendant Barbara Lynn to Dismiss or in the Alternative for Summary Judgment on Qualified Immunity Grounds, filed November 12, 2001 (**Doc. 38-1 & 38-2**); (2) Motion by Defendant Bradford Allison to Dismiss, or in the Alternative for Summary Judgment on Qualified Immunity Grounds, filed November 12, 2001 (**Docs. 40-1 & 40-2**); (3) Motion by Defendants for Summary Judgment on Constitutional Claims, filed January 7, 2001 **(Doc. 71-1)**; and (4) Motion by Plaintiff to Strike Defendant Allison's Motion to Dismiss or Alternatively Motion for Summary Judgment on Qualified Immunity Grounds and Defendant Lynn's Motion to Dismiss or Alternatively Motion for Summary Judgment on Qualified Immunity Grounds, filed December 10, 2001 **(Doc. 60)**.

      This case was originally filed in the Second Judicial District Court, County of Bernalillo, State of New Mexico and was removed to this Court pursuant to 28 U.S.C. § 1446(d). Plaintiff asserts seven counts of federal and state claims: breach of contract (Count I), breach of the

implied covenant of good faith and fair dealing (Count II), promissory estoppel (Count III), violations of First Amendment rights (Count IV), violations of Fourteenth Amendment liberty interest (Count V), violations of procedural due process (Count VI), and violations of the right to equal protection of the laws (Count VII). This Memorandum Opinion addresses Plaintiff's federal claims, Counts IV, V, VI and VII.

## BACKGROUND

Plaintiff worked for the Albuquerque Public Schools ("APS") for 20 years. In 1992, she was hired as principal of the New Futures School ("NFS"), an alternative high school within the APS system,[1] and was employed as principal in July 1998 when Defendant Bradford Allison began his tenure as Superintendent of Schools for APS. On July 24, 2000, after she signed a one-year contract for the 2000-01 school year, she was told she was being removed as principal at NFS and that she would be assigned as an Instructional Cluster Assistant, at no reduction in salary.

In July 1999, four teachers filed a complaint with the internal Equal Opportunity Service office ("EOS") of APS against Plaintiff asserting claims of retaliation and harassment. Defendant Barbara Lynn was the Director of the EOS at the time. An investigation into the complaints resulted in a finding of no probable cause for the retaliation and a finding of probable cause for harassment of three of the teachers. Plaintiff appealed these findings. On March 21, 2000, Defendant Allison reversed the findings regarding harassment. The following year, another staff member, Carol Moscrip, filed a complaint against Plaintiff based on retaliation. The EOS office determined that there was probable cause to support that charge. Defendant Allison upheld this

---

[1] The school is geared to meet the special needs of teen parents.

2

determination on Plaintiff's appeal.

Plaintiff characterizes her transfer to the position of Instruction Cluster Assistant as a demotion which chronologically followed the resolution of the complaints filed against her. Plaintiff claims that when she was hired as principal at NFS, she was given a directive by the APS administration, including then-Superintendent Jack Bobroff, to "clean up" financial irregularities at NFS. She contends that the complaints lodged against her arose from feelings of animosity when, in carrying out the directive, she made changes at NFS which proved to be unpopular with some staff members.

In May 2001, Plaintiff was informed that she would be employed as a Cluster Assistant for the school year 2001-02, again with no reduction in salary. In June, 2001, Plaintiff resigned. Plaintiff states that she was told on several occasions that there had been no retaliation, but that transferring one principal was easier than transferring a lot of staff members. She contends that although Defendants directed her to clean up financial irregularities at NFS and told her she had their support, in the end they turned on her. She also alleges that APS, through the actions primarily of Defendants Allison and Lynn, failed to address the unfounded complaints of certain staff and community members in a manner consistent with APS's policies and procedures, Plaintiff's contract, and the agreement between APS and the Principals' Association. Defendants' position is that the transfer was made out of necessity because of the conflict and tension between Plaintiff and the NFS staff and the resulting impact on the NFS students.

## DISCUSSION

With a view toward an organized approach to the analysis of Plaintiff's federal claims, and given that the underlying facts are common to all of Plaintiff's claims, I will address the liability of

each Defendant under the federal claims asserted by Plaintiff.[2]

**Legal standards**

Summary judgment is proper if the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue of material fact is "genuine" if a "reasonable jury could return a verdict for the nonmoving party." *Moya v. U.S.A. et al*, 35 F.3d 501, 503 (10th Cir. 1994) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

The individual Defendants have raised the defense of qualified immunity, which obligates the Plaintiff to sufficiently assert the violation of a constitutional right and then show that the law had been clearly established so that a reasonable official, in the Defendants' situation, would have understood that his or her conduct violated that right. *See Martinez v. Mafchir*, 35 F.3d 1486, 1490 (10th Cir. 1994) (citing *Siegert v. Gilley*, 500 U.S. 226, 231-33 (1991) (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). If a plaintiff meets this twofold burden, a defendant may still prevail on a summary judgment motion by showing that there are no genuine issues of material fact and that she is entitled to judgment as a matter of law. *Howard v. Dickerson*, 34 F.3d 978 (10th Cir. 1994); Fed.R.Civ.P. 56(c). Although the Court views the record with all its

---

[2] Plaintiff points out, correctly, that qualified immunity is properly asserted as a defense by the individual Defendants Allison and Lynn in the federal constitutional claims (Counts IV, V, VI, and VII), but is not applicable as a defense to the first three claims (Doc. 63 at 2, n.2). At the same time, Plaintiff concedes that the first three claims are appropriately directed against the Board of Education and the School District, and not Defendants Allison or Lynn, even though their conduct "binds and imposes liability upon Defendant APS." Doc. 42 at 1. For clarity's sake, this would seem to separate the claims as follows: Counts I, II and III against APS and the School Board only; and Counts IV, V, VI and VII against all defendants, but with Defendants Allison and Lynn availing themselves of a qualified immunity defense. Counts I, II and III are state law claims not addressed in this Memorandum Opinion.

inferences in the light most favorable to the nonmoving party, the nonmovant must then go beyond the pleadings and identify specific facts showing there is a genuine issue for trial. *Langley v. Adams County, Colo.*, 987 F.2d 1473, 1476 (10th Cir. 1993) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

**Count IV: First Amendment Retaliation**

Plaintiff asserts in Count IV a claim of retaliation based on her exercise of protected speech regarding (1) "financial irregularities" at NFS; (2) the workings of the EOS at APS and (3) the pursuit of her appeal rights from the EOS determinations in 2000.

In order for a plaintiff to prevail on a claim that she was discharged in retaliation for exercising her constitutionally- protected right to freedom of speech, a plaintiff must prove that the speech is protected under the First Amendment and the speech was a substantial or motivating factor in the governmental entity's decision to terminate plaintiff's employment. *Conaway v. Smith*, 853 F.2d 789, 795 (10th Cir.1988) (citing *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977). Once the plaintiff meets that burden, an employer may avoid liability by showing that it would have made the same decision in the absence of the protected activity. *Childers v. Ind. School Dist. of Bryan County*, 676 F.2d 1338, 1341 (10th Cir.1982). Speech is constitutionally protected only when the speech relates to matters of public concern, *Connick v. Myers*, 461 U.S. 138, 146 (1983) and when the interests of the public employee in commenting on matters of public concern outweigh the interests of the government employer "in promoting the efficiency of the public services it performs through its employees." *Pickering v.*

5

*Board of Education*, 391 U.S. 563, 568 (1968).[3]

In this case, I need go no further than the initial inquiry, since none of Plaintiff's speech triggers First Amendment protection. Speech on a matter of public concern is speech which can "be fairly considered as relating to any matter of political, social, or other concern to the community." *Connick v. Meyers*, 461 U.S. 138, 146 (1983). Plaintiff's appeal of the EOS findings and her allegations of bias by Defendants' Lynn and Allison are matters which touch on a purely personal matter, i.e., Plaintiff's seeking to overturn adverse EOS findings of retaliation and harassment. *See Curtis v. Oklahoma City Pub. Sch. Bd. of Educ.*, 147 F.3d 1200, 1212 (10th Cir.1998) (speech concerning individual personnel disputes or internal policies typically will not involve public concern).

Plaintiff's argument that her speech about retaliation and harassment constitutes a matter of public concern is only partly correct. While retaliation and harassment typically would be a matter of public concern, what is of general interest to the public is not necessarily of public concern for First Amendment purposes. *See Wilson v. City of Littleton*, 732 F.2d 765, 769 (10th Cir. 1984); *Koch v. City of Hutchison*, 847 F.2d 1436, 1445 (10th Cir. 1988), *cert. denied*, 488 U.S. 909 (1988). Assuming that speech pertains to an issue that could arguably be viewed as a matter of public concern, "if the employee has raised the issue solely in order to further his own employment interest, his First Amendment right to comment on that issue is entitled to little weight." *White Plains Towing Corp. v. Patterson*, 991 F.2d 1049, 1058 (2d Cir.1993) (quoting *Connick*, 461 U.S. at 147). Additionally, the motive of the speaker must be examined in order to

---

[3] If the employee's speech does not touch on a matter of public concern, the Court need not engage in the *Pickering* balancing analysis. *Connick*, 461 U.S. at 146.

determine whether the speech was "calculated to redress personal grievances or whether it had a broader public purpose." *Gardetto v. Mason*, 100 F.3d 803, 812 (10th Cir.1996), cited in *Lee v. Nicholl et al*, (Table, text in WL), No. 98-1359 1999 WL 1079631 (10th Cir.(Colo.) Dec. 1, 1999). The impropriety of which Plaintiff complains was limited to Defendants' conduct in connection with their handling of her appeals from the EOS determinations.

Plaintiff's "speech" on the financial irregularities occurring at NFS sounds promising as potential protected speech, but ultimately fails. According to Plaintiff, when she was first hired as principal at NFS, she was instructed to put an end to the school's irregular relationship with its non-profit fund-raising organization.[4] She was informed of certain financial irregularities related to the activities of the NFS' former administration and staff, and an Advisory Board known as New Futures, Inc. According to Plaintiff, New Futures, Inc. was paying not only for certain school expenses, but also paying some salaries including direct compensation to employees who were already receiving full-time salaries. Plaintiff states that she halted the practice of depositing governmental day care support checks and grant monies in the New Futures, Inc. coffers rather than in the NFS accounts and she arranged for day care center workers at NFS to become APS employees rather than employees of New Futures, Inc. Apparently these changes were met with some hostility by those staff members who were affected by the changes.

Plaintiff would have the Court designate statements made in connection with her job duties as protected speech simply because the speech interfaced with irregularities in the use of

---

[4] Although Defendants do not specifically concede that the administrative directive was in fact given, the evidence weighs heavily in Plaintiff's favor that Plaintiff was made to understand that financial irregularities that existed prior to her employment were to be discontinued under her leadership.

7

public funds. While the nature of her work does not preclude Plaintiff from asserting speech that could be considered protected under the First Amendment, neither does it grant her a free pass to First Amendment protection. *See*, *e.g., Cahill et al., v. O'Donnell et al.*, 75 F.Supp.2d 264, 273 (S.D.N.Y. 1999) (speech that was, in a general way, a matter of public concern, was not protected where Internal Affairs personnel "simply exercised their duties. . . to investigate allegedly improper occurrences within the State Police, and to report their findings as requested").[5] Thus, Plaintiff's request for an independent audit of the financial relationship between NFS and New Futures Inc. shortly after she was hired as principal in 1992 cannot be considered protected speech, but Plaintiff carrying out the directive to look into financial irregularities at the school.[6] Similarly, Plaintiff's discussion with Defendant Allison about the "troubled history" of the school and the request for administrative support is not constitutionally protected for the same reason.[7]

Plaintiff contends that the private element in her speech should not negate its public

---

[5] The court in *Cahill* stated that while the speech occurred in the ordinary course of plaintiffs' work as internal affairs members, "this fact does not preclude a determination that their speech implicated matters of social or public significance, [but] the fact that the speech arose during the usual performance of their duties weighs strongly against a characterization of the speech as relating to a matter of public concern." At 273.

[6] Given that I do not find the speech protected, I need not make a finding on whether the affidavit by Ms. Keller which mentions Plaintiff's request for an independent audit is properly before the Court, as Defendants maintain. *See Pltff's Supp. Resp., Ex. 11*. I also note that the time delay of several years between this speech and the alleged adverse action, which occurred some time in 2000, would pose considerable causation problems for Plaintiff.

[7] In the summer of 1999, after several teachers had filed EOS complaints against her, Plaintiff went to Defendant Allison to make sure that he understood "the repercussions that occur when principals do this" and to find out what "direction" he wanted her to take. *Pltff's Resp. to SJ, Ex. 2 at 290-91*. According to Plaintiff, Defendant Allison said that he understood and that he had "every faith that you will carry it out. Go for it." *Id at 291*.

8

concern attributes. The problem with Plaintiff's "speech" is that the public concern attributes are lacking. There are no disputes of fact about the contents or identification of the speech in question such that there may be public concern overtones in the disputed areas. *Cmp., Finn v. State of N.M. et al.*, 249 F.3d 1241, 1248 (10th Cir. 2001) (citing *Connick v. Myers*, 461 U.S. 138, 154 (1983)) (even if only "tidbits" of plaintiff's speech is protected, plaintiff is entitled to *Pickering* analysis). Plaintiff's discussions with Defendant Allison never went outside the bounds of inquiring into what he expected of her as an employee. Her concerns were related solely to her ability to function as a principal and in executing her duties, including the directive she alleges to have received from the administration itself.

Plaintiff identifies several other items of speech as protected, but none crosses the line into constitutionally protected territory: pointing out procedural and substantive deficiencies in the EOS system; speaking out on Defendant Allison's failure to "fulfill his role as decision-maker"; protesting the turmoil at the school caused by the delays and the administration's failure to back its principal [Plaintiff] -- every one of these items of "speech" was performed in the context and for the purpose of Plaintiff's appeals from the EOS findings of probable cause. *See Rankin v. McPherson*, 483 U.S. 378, 384-855 (1987) (whether an employee's speech addresses a matter of public concern "must be determined by the content, form, and context of a given statement, as revealed by the whole record". *Copp v. Unified Sch. Dist. No. 501*, 882 F.2d 1547,1552 (10th Cir. 1989).

Because she has not shown that any of her speech was protected, Plaintiff has not alleged a constitutional right under the First Amendment. A *Pickering* analysis is unnecessary, as well as

9

an analysis to determine whether Defendants Allison and Lynn are entitled to qualified immunity.[8] Therefore, all the Defendants are entitled to summary judgment on Plaintiff's First Amendment retaliation claim.

**Count V: Fourteenth Amendment Liberty Interest**

Plaintiff alleges that Defendants disseminated or caused to be disseminated false charges of incompetence, racism and sexism about Plaintiff, which caused damage to her reputation, standing in the community and ability to obtain future employment. These allegations are related to the EOS complaints and charges that were filed with the federal Office of Civil Rights and settled without Plaintiff's knowledge while she was still principal of NFS.

A plaintiff-employee asserting a liberty interest claim must prove the following four requirements: (1) the defendant made a statement impugning employee's good name, reputation, honor, or integrity; (2) the statement was false; (3) the defendant made the statement in the course of termination proceedings or the statement foreclosed future employment opportunities; and (4) the statement was published. *Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 526 (10th Cir. 1998). Plaintiff's claim on this theory fails because she cannot meet any of the above requirements.

The "statements" involved here are the complaints made by staff members to the EOS office. However, the veracity of statements in that context cannot support a claim alleging deprivation of a liberty interest because the veracity of such statements are irrelevant. *See*

---

[8] On a first amendment claim, this inquiry is based on whether speech addressed matters of public concern, and then, if so, whether the protected nature of the speech was sufficiently clear that the defendants should have known that the employer's interests would not survive a balancing inquiry. *Patrick v. Miller*, 953 F.2d 1240, 1246 (10th Cir. 1992).

*Lighton v. Univ. of Utah*, 209 F.3d 1213, 1223 (10th Cir. 2000).[9] Further, statements made incidental to grievance or internal resolution procedures are generally insulated from constitutional attack. *See Gen'l Motors corp. v. Mendicki*, 367 F.2d 66, 70 (10th Cir. 1996) (referring to statements made in conference or bargaining session to adjust or peaceably dispose of issues with respect to an employer's grievance); *see also Hasten v. Phillips Petroleum Co.,* 640 F.2d 274, 279 (10th Cir. 1981).

Notwithstanding the privileged character of the complaints made against Plaintiff, Defendants would not be entitled to publish the information or statements in the complaints beyond those who would necessarily receive the information. *Hasten,* 640 F.2d at 279. Plaintiff, however, does not allege that Defendants published the information to anyone other than the individuals who filed the EOS complaints and those involved in the investigations. Because the publication of the complaints was limited to internal sharing, it does not satisfy the publication element of a liberty interest claim. *See Garcia v. City of Albuquerque*, 232 F.3d 760 (10th Cir. 2000) (no publication where doctor made the statement only in internal medical documents for the City ) (citing *Lancaster v. Indep. Sch. Dist. No. 5*, 149 F.3d 1228, 1235 (10th Cir. 1998)(liberty interest not violated where no public statements of disparagement made).

Plaintiff's response rests merely on the argument that Defendants' misconduct violated Plaintiff's liberty interest in her good name. The United States Constitution does not, however, recognize a separate liberty or property interest in reputation. *Paul v. Davis*, 424 U.S. 693

---

[9] Plaintiff alleges that Defendant Allison erroneously sent out a letter upholding one of the appeals before he signed the final letters overturning them. *Pltff's Ex. 8*. However, Plaintiff does not allege that Allison failed to subsequently send out a letter notifying the staff member that he had in fact overturned the EOS decision.

(1976). Plaintiff alleges that the complaints made against her and the subsequent transfer affected her ability to find suitable employment,[10] but offers nothing in the way of either argument or evidence that the EOS complaints and resolutions, or Defendants' commitments to resolve, were published or made in the course of her termination. *Cmp., Siegert v. Gilley*, 500 U.S. 226, 233 (1991) (no allegation of constitutional right, where allegedly defamatory letter by employer was not written incident to termination, and plaintiff voluntarily resigned). Thus, having failed to allege a viable Fourteenth Amendment liberty interest claim, all Defendants are entitled to summary judgment on this claim.

**Count VI: Fourteenth Amendment Procedural Due Process**

Plaintiff alleges that Defendants violated her due process rights by involuntarily transferring her to a position of Instructional Cluster Assistant and by denying her process in returning to a principal position. Process is due only when the government terminates a protected interest. *See Snyder v. Murray City Corp*, 159 F.3d 1227 (10th Cir. 1998); *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985) (determination of property interest is first part of two-part inquiry). Thus, the question of whether Plaintiff was afforded adequate due process is raised only if Plaintiff successfully alleges a property interest in employment.

Property interests are not created by the Constitution, but by independent sources such as state law. *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972). Under New Mexico law, Plaintiff is not afforded the constitutional protection she seeks. *See Swinney v. Deming Bd. of Educ.,* 117

---

[10] Plaintiff alleges that APS entered into commitments to resolve other complaints filed in the federal Office of Civil Rights which included payment of monies to the complainants, findings against her, and restrictions on her re-employment with the NFS. *See Pltff's Ex. 2 at 190-91; Pltff's Resp. to SJ on Contract Claims, Fact 63*.

N.M. 492 (1994) (citing N.M.S.A. 22-10-11(E)). As a school administrator,[11] Plaintiff has no tenure rights in employment and no legitimate expectation of reemployment -- and therefore no entitlement to procedural due process on the matter of her transfer. *Id*. (school superintendent whose contract was not renewed had no right to notice and hearing).

Plaintiff fares no better in establishing a property interest that is entitled to due process by relying on either the School Administrator Contract ("Administrator Contract") or the Memorandum of Understanding ("MOU") with the School Administration Principals' Association. *See Perry v. Sindermann*, 408 U.S. 593, 601 (1972) (property right in continued employment may be created by an implied contract, if there are "rules or mutually explicit understandings" that support plaintiff's claim of entitlement to the benefit that can be invoked at a hearing). It is undisputed that Plaintiff entered into a one-year Administrator Contract for the school year 2000-2001, with no provision for renewal or extension. *Ex. A to Defts.' Mot. for Sum. J. on Contract Claims*. The "cause" requirement for termination of the contract, ¶ 4, applies only for the duration of the contract term, i.e., it does not transform Plaintiff's one-year contract into a contract that provides an expectation for continued employment. Also, termination of the contract is not an issue in this case. The 2000-2001 contract was in effect during Plaintiff's transfer, and as to the second contract for the school year 2001-2002, Plaintiff chose to resign instead of continuing employment as a instructional cluster assistant at no reduction in salary.

The Administrator Contract did not create a property right in continued employment, much less a property right to a job as principal. In fact, the contract language gives the Board of

---

[11] Plaintiff concedes that her job was an administrative position. *See Resp. at 16.*

13

Education "sole discretion" to "transfer Employee to a different position within the District at any time during the term of this contract provided that the Employee's salary [remain unchanged]." *Ex. A, Defts' Mot. for Sum. J. on Contract Claims*. Because Plaintiff has not otherwise established a right to any kind of expectation in keeping her position as principal, she cannot establish a right to procedural due process regarding her reassignment / transfer. *Cmp., Wooten v. Clifton Forge Sch. Bd.*, 655 F.2d 552, 555 (4th Cir. 1981) (no property interest in position as school principal where contract was silent on issue the of reassignment and state law did not bar summary reassignment that "otherwise might be inferred from his continuing contract");[12] *Childers v. Indep. Sch. Dist.*, 676 F.2d 1338, 1340 (10th Cir. 1982) (teachers did not acquire the right to be employed in any particular position, because contract did not provide that teachers must be given the same assignment or wage upon renewal)); *cmp. also, Hennigh v. City of Shawnee et al.*, 155 F.3d 1249, 1253 -54 (10th Cir. 1998) (setting out analysis for determining if there is a property right in a particular employment status).

Plaintiff does not challenge the express language of the Administrator Contract. Instead, she relies on her own expectation that contract renewals for principals were routine and expected. *See Ex. 2 at 121-22, Pltff's Resp. to Mot. for Sum. J. on Contract Claims.*[13] Unilateral

---

[12] I note that even though the contract in *Wooten* provided for continued employment and was silent on the issue of reassignment, the court nevertheless determined that plaintiff did not have a property interest that would afford a right to due process.

[13] As legal support for the proposition that the summary judgment should be denied on the question of APS employees' protected right to continued employment, Plaintiff relies on an unpublished district court Memorandum Opinion and Order, *Keller v. Board of Educ. of the City of Albuquerque et al.*, Civil No. 00-1667 MV/LFG. The case is not analogous. The plaintiff in *Keller*, who had undergone treatment for breast cancer, did not allege a procedural due process claim. In that case, Defendants removed plaintiff from her position as head of human resources. The plaintiff then created a position for herself in the APS Research, Development and

expectation, however, is not enough to create a constitutionally protected property interest. *See Abramson*, 278 F.3d at 99.

Plaintiff also contends that her transfer and denial of process to return to the position of principal violated the "guarantees expressly stated" in the MOU, *Pltff's Resp. at 17 and Ex. 6*. I am not persuaded that the MOU by itself sufficiently creates a property right that would entitle Plaintiff to any sort of constitutional process. It is essentially a guideline for the process that was followed in instances of transfer or reassignment.[14] *See, e.g., Abramson et al v. Pataki et al*, 278 F.3d 93, 99 (2d Cir. 2002) (memorandum did not rise to level of creating property right in employment); *Gorham et al. v. City of Kansas City,* 225 Kan. 369 (1979) (provisions of memorandum of understanding waived due process grievance process). Further, the Administrator Contract controlled the employment relationship between Plaintiff and APS by its express provisions, as it constituted "the entire understanding and agreement between [the school board and the employee and] supersedes all agreements previously made between the parties relating to the subject matter." *Ex. A, ¶ 10, Mot. for Sum.J. on Contract Claims.*

The MOU details the process to be utilized for both voluntary transfers and reassignments. Reassignment is defined as "a transfer initiated by the Superintendent . . . ." *Ex. 6, Pltff's Resp.* Plaintiff contends that the basis for her transfer was not one of the limited circumstances for which transfer was allowed under the MOU. *See Pltff's Resp. to Defts' Undisp. Facts (Resp. to Mot.*

---

Accountability Department where she essentially had no job responsibilities, no supervisor, and no job classification or title. Her salary was cut to fifty-five percent, which amounted to less compensation than her retirement would offer.

[14] The MOU is entitled an "Understanding of the Internal Transfer Process for Principals and Assistant Principals."

15

*for Sum. J. on Contract Claims), ¶ 56*. Those listed circumstances include: emergencies arising from state or federal mandates; student and staff safety; voluntary requests for transfer and other requests "to ensure consistency regarding employee issues across the district as well as legal compliance." The MOU states that transfer or reassignment in those circumstances allows the Superintendent to "deviate from the APS Voluntary Internal Transfer process." *Pltffs' Resp., Ex. 6.* It is unclear why Plaintiff would refer to provisions in the MOU governing voluntary transfers when her re-assignment was not voluntary. It is also unclear whether Plaintiff is alleging that Defendant Allison impermissibly erred in deviating from the normal process outlined in the MOU, or that Plaintiff's transfer was not carried under that process in the first place. Either way, Plaintiff's claim fails.

I have already determined that Defendants did not deprive Plaintiff of due process under the U.S. Constitution because Plaintiff has not established a property interest in her employment. Even if irregularities existed in the manner in which the transfer was carried out (about which Plaintiff has not been specific), APS' failure to follow its own procedural rules does not rise to the level of a constitutional claim. *See Glatz v. Kort*, 807 F.2d 1514, 1517 n.4 (10th Cir. 1986) (a federal due process claim cannot be based on a violation of state law "because state procedures do not define what is required under federal due process"); *see also Kraushaar v. Flanigan*, 45 F.3d 1040, 1049 (7th Cir. 1995) (failure to follow procedures that are required by state law but not by the federal Constitution establishes only a violation of state law).

Further, Plaintiff cannot look back to an alleged lack of due process in connection with the complaints made against her and bootstrap that deficiency to her allegations of due process violations in connection with her transfer. Plaintiff has no federally protected right to the manner

in which the school handled its internal grievances. Any process due would be specific to the circumstances surrounding her transfer, and that is only with the assumption that Plaintiff had a property right in continued employment which she does not. Based on the undisputed facts, Plaintiff has not established an entitlement to due process. Therefore, all Defendants are entitled to summary judgment on Plaintiff's procedural due process claim.

**Count VII:    Fourteenth Amendment Equal Protection**

Plaintiff, for her Fourteenth Amendment claim, alleges that she was singled out for demotion in the form of an involuntary transfer. Because Plaintiff does not allege violation of a fundamental right or belonging to a suspect group, the relevant inquiry is whether Defendants treated her differently from others "similarly situated" and that this different treatment lacked a rational basis. *See Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 533 (10th Cir. 1998); *see also City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432 (1985).[15]

As examples of different treatment, Plaintiff points to several former principals who were transferred to lateral positions instead of being assigned as Instructional Cluster Assistants. Both Milton Baca and Eddie Soto, for example, were involuntarily transferred from a high school to a middle school principalship. Plaintiff also claims that one of the principal positions was open during her transfer, but she was denied the job.[16] These examples do not establish a basis for

---

[15] "Class of one"equal protection claims are recognized where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment. *See Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (concurring opinion) (citing *Sioux City Bridge Co. v. Dakota County*, 260 U.S. 441 (1923)).

[16] In her deposition, Plaintiff claims that it was Mr. Baca who got the position she was denied. *Ex. 2, Pltff's Resp. to Mot. for Sum. J. on Contract Claims*. However, the briefs refer to Mr. Soto instead. *Pltff's Resp. to Mot. for Sum. J. on Constitutional Claims, at 5 and 19*.

17

Plaintiff's equal protection claim. Defendants did not believe making Plaintiff principal of another school was prudent since the circumstances involving Plaintiff had become a "very public issue" and because school staff would have wanted input in the selection process. *Ex. 4 at 8, Pltff's Resp. to Sum. J. on Constitutional Claims*. Given that Plaintiff's principalship was the center of the maelstrom at NFS (whether justified or not in relation to Plaintiff's actions), I find that Defendants' concern in avoiding similar hostilities by transferring Plaintiff to a non-principal position had a rational basis. Defendants are therefore entitled to summary judgment on Plaintiff's equal protection claim.

**Plaintiff's Motion to Strike**

Plaintiff moves to strike both individual Defendants' motions based on qualified immunity because the motions do not set out a "concise statement of all the material facts." The material facts set forth in the parties' summary judgment motions on the constitutional and contract claims, which are part of the record, provided a sufficient basis upon which I made determinations on Plaintiff's federal claims.

**THEREFORE,**

**IT IS ORDERED** that the Motion by Defendants for Summary Judgment on Constitutional Claims (**Doc. 71-1**) is hereby GRANTED;

**IT IS FURTHER ORDERED** that the Motion by Defendant Barbara Lynn to Dismiss or in the Alternative for Summary Judgment on Qualified Immunity Grounds (**Doc. 38-1 & 38-2**) is hereby GRANTED.

**IT IS FURTHER ORDERED** that the Motion by Defendant Bradford Allison to

Dismiss, or in the Alternative for Summary Judgment on Qualified Immunity Grounds (**Docs. 40-1 & 40-2**) is hereby GRANTED.

**IT IS FINALLY ORDERED** that Plaintiff's Motion to Strike Defendant Allison's Motion to Dismiss or Alternatively Motion for Summary Judgment on Qualified Immunity Grounds and Defendant Lynn's Motion to Dismiss or Alternatively Motion for Summary Judgment on Qualified Immunity Grounds **(Doc. 60)** is hereby DENIED.

_____
UNITED STATES DISTRICT JUDGE